In the Matter of the Accounting of MARINE MIDLAND BANK-WESTERN, as Successor Trustee under Trust Agreement with SPENCER KELLOGG, SR. JOAN K. WINDER, Appellant; ANDREW H. K. CLARKE et al., Respondents.

Fourth Department, December 17, 1976

*Hill, Janssen, Corbett & Roberts (Victor Corbett* of counsel) and *O'Shea, Adamson, Reynolds & Napier* for appellant.

*Phillips, Lytle, Hitchcock, Blaine & Huber (Arthur Sherwood* of counsel), for Marine Midland Bank-Western, respondent.

*James M. Nesper,* guardian ad litem for Sallie L. Kellogg and others, respondents.

*David L. Jones,* guardian ad litem for Bonnie Sue Long and another, respondents.

*Jaeckle, Fleischmann & Mugal* for Marion A. Kellogg, respondent.

*Moot, Sprague, Marcy, Landy, Fernbach & Smythe (W. Barry Mallon* of counsel), for William D. Redle and another, respondents.

*Ohlin, Damon, Morey, Sawyer & Moot (Richard Moot* of counsel), for Andrew Clarke and others, respondents.

*Cohen, Swados, Wright, Hanifin & Bradford (Hillary P. Bradford* of counsel), for Charles S. Clark and another respondents.

DILLON, J. This proceeding was commenced by the successor trustee to judicially settle the accounts of an *inter vivos* trust created by Spencer Kellogg, Sr. in 1922. Under the terms of the trust its income is to be paid equally to each of the settlor's seven children until its termination, and in case of the death of any of the settlor's children his or her one-seventh share of the income is to be paid "to the same persons as will receive the principal of the trust fund". Thus the determination of who is entitled to income necessarily raises the question as to who will share in the distribution of the principal.

The following paragraph precedes the distribution-of-principal provisions: "Upon the death of the survivor of DONALD KELLOGG and DORIS KELLOGG NEALE; then and in that event the principal of the said trust fund, other than that derived from the sale of the real estate owned by the Lochevan Company, Inc. shall be distributed as follows:" Since Doris Kellogg Neale, who is a child of the settlor, is living, the trust principal has not yet been distributed.

The seven distribution-of-principal provisions, one for each child, are identical except for the name and gender of the beneficiary. The following terms comprise a representative directive:

"A. One equal seventh part thereof shall be paid over to SPENCER KELLOGG, JR., provided he shall then have more than one child or the issue of more than one child. In case of the death of Spencer Kellogg, Jr. prior to the termination of the trust leaving him surviving or born subsequent to his death more than one child or the issue of more than one child, then

and in such case the said property constituting the equal seventh part thereof shall be distributed to the said children or issue in equal shares, the issue of any deceased child to take the share which its parent would otherwise have taken.

"In case, however, at the termination of the trust the said Spencer Kellogg, Jr. shall be living and shall not then have more than one child or the issue of more than one child, or in case he be dead and he shall not have left him surviving or born subsequent to his death any child or the issue of any child, or in case he shall have left only one child or only the issue of one child, then and in such case, the property constituting the said equal seventh part thereof shall be distributed in equal shares, *per stirpes* and not *per capita,* to the issue of such of the children of Spencer Kellogg, Sr. as may then have more than one child or a deceased child leaving issue surviving; subject to such limitation, the issue of any deceased child shall take the share which its parent would otherwise have taken."

The present controversy arises as a consequence of the death of Rodney Kellogg, who died without issue in September, 1974. Rodney was the son of Donald Kellogg, one of settlor's children. He and his two living sisters, Marion Kellogg and appellant Joan Winder, survived their father, who died in 1958.

Appellant contends that upon the death of a child of the settlor, who has qualified for a share in the principal, the children of the deceased child have remainder interests which are contingent upon their survival to the termination of the trust. The issue raised, therefore, is whether Rodney Kellogg's remainder interest in the principal, and thus present income, vested upon the death of his father, Donald Kellogg, or whether his remainder interest was contingent upon his survival.

Adoption of appellant's interpretation of the trust document will have broad ramifications. At the time of Rodney's death he was receiving one third of the one-seventh portion of the trust income allocated to the Donald Kellogg line, and it is this share which appellant asserts should not be paid to Rodney's estate but should be divided by her and her sister. If appellant is correct, the share of the trust income allocated to the estate of Morris Clark, deceased son of settlor's daughter Gertrude Clark, would also cease and that estate would receive no share in the principal, since Morris died without

issue after surviving his mother. Additionally, under appellant's view, inasmuch as Morris' deceased brother Teunis, who also survived his mother, was survived by two adopted children, the question arises as to whether adopted children are "issue" for the purpose of determining potential beneficiaries.

While appellant acknowledges that the obvious purpose of the settlor, as manifested by the trust agreement in its entirety, is to perpetuate his bloodline, she also urges that it demonstrates an intent to limit the class of beneficiaries to his bloodline and that, therefore, the trust is designed to favor living grandchildren as opposed to the estates of deceased childless grandchildren.

The settlor's intention as expressed in the agreement is, of course, the most important consideration (see *Matter of Fabbri*, 2 NY2d 236, 240). This agreement discloses that the settlor's paramount concern was indeed the encouragement of his bloodline. However, in order to accomplish this goal, he established a "procreativity test" which each of his children had to pass in order to share in the trust. It is clear that a child of the settlor, who predeceases the termination of the trust, nonetheless meets the standard if he is survived by two or more children. Donald Kellogg and Gertrude Clark were each survived by three children, and it is thus indisputable that they passed the test imposed by the settlor. Under appellant's interpretation, however, none of the settlor's children could be confident that his or her heirs would be provided for by the trust, even though he or she had met the requisite standard of procreativity.

Given the settlor's strong desire to propagate his line, it is improbable that he intended to render uncertain the remainder interests of his grandchildren and the issue of his deceased grandchildren. Such uncertainty could deter his children from having offspring and thus frustrate his plan. It is unreasonable to conclude, particularly in the absence of clear language, that after having established qualifications for his children to share in the trust, the settlor intended that the offspring of his qualifying children should be deprived of participation in the trust.

Appellant next relies upon specific language in the trust agreement. Our examination of the language, however, leads us to conclude that the remainder interests vest in the settlor's grandchildren who survive the death of their parent, the settlor's child.

Though it is urged that the words "[u]pon the death of the survivor", which fix the date of the termination of the trust, also establish the date on which the beneficiaries of the trust are to be determined, we view the phrase as annexing "futurity only to possession and not to the substance of the gift" *(Matter of Campbell,* 307 NY 29, 34). Nor do the words "said children or issue" contained in the second sentence of the distribution-of-principal provisions impose a survivorship requirement. The words "said children" refer to the settlor's grandchildren, and the absence of language requiring their survivorship to distribution indicates that the settlor did not intend to impose such a requirement (see *Fulton Trust Co. v Phillips,* 218 NY 573; *Matter of Ashner,* 24 AD2d 595; *Matter of Sweazey,* 2 AD2d 292). The word "issue" refers to a great-grandchild of the settlor whose parent predeceased the settlor's child. Appellant reads this phrase as meaning "said children or their issue". Based on this erroneous interpretation, she concludes that a gift to alternate takers is created and a condition of survivorship implied. The fact that the standard language "said children or their issue" was not used to signify a substantial gift to issue, indicates a conscious effort on the part of the settlor to refer to the issue designated earlier in the same sentence. Appellant also argues that the phrase "the issue of any deceased child to take the share which its parent would otherwise have taken" requires survivorship to distribution. These words, however, direct a stirpital distribution among the issue of a deceased grandchild of the settlor who survives the death of his or her grandparent, the child of the settlor. The phrase "otherwise have taken" refers to a settlor's grandchild who predeceases his or her parent of the Kellogg line.

A comparison of the two distribution-of-principal paragraphs indicates that the event which qualifies a line may occur before the termination of the trust, and that in the event of a failure of a line to qualify, the determination of who is to share in that line's redistributed principal is to be made at the termination of the trust. Under the present circumstances all of the lines except that of Spencer Kellogg, Jr. have qualified for their share of the principal by meeting the requirements of the first paragraph. Whether those qualified lines remain so "at the termination of the trust" for the purpose of sharing in redistributed principal is to be determined at the time of termination.

Appellant also argues that the words "shall be distributed" mean that the gift is contingent upon survival because it is to occur in the future. This phrase relates not to the date of the termination of the trust, but rather to the date of the death of the settlor's child, which, from the settlor's standpoint, was also to occur in the future.

Finally, it is well-settled law that a construction which accomplishes the early vesting of estates is to be favored *(Matter of Krooss,* 302 NY 424; *Matter of Watson,* 262 NY 284; *Matter of Clark,* 120 Misc 191).

The applications of the guardians ad litem for counsel fees and expenses should initially be determined in the court of original instance *(Matter of Hedrick,* 52 AD2d 1035; *Matter of Ebright v Ward,* 39 AD2d 1013).

Accordingly, the order of the trial court should be affirmed.

MARSH, P. J., CARDAMONE, MAHONEY and GOLDMAN, JJ., concur.

Order unanimously affirmed, with costs payable out of the estate to all parties filing briefs.