Louis D. Laurino, S.
This is a proceeding to settle the executor’s account of Manufacturers Hanover Trust Company. Objections have been filed on behalf of James L. Brown to the said accounting.
*987 The objections arise ont of the failure of the decedent to exercise two testamentary powers of appointment in favor of the objectant. As a result, objectant claims title to one third of all property received by the executor as set forth in the account, or, in the alternative objectant seeks to recover the alleged consideration given for the promise to exercise the powers in his favor. The remaining objections are to any charges being made against the property claimed by the objectant.
In order to fully comprehend the nature of objectant’s claims, it is necessary to set forth a rather detailed statement of the facts which the court has found from the exhibits and documents filed.
The objectant is the only child of the decedent’s marriage to Muriel Brown (hereinafter “Muriel”). The marriage took place on January 6, 1931 and the objectant was born on January 29, 1934. At the time of his marriage, and at all times thereafter, decedent was the donee of a testamentary power of appointment in each of two trusts. The first of these powers is a general power of appointment granted to the decedent under the will of his mother, Grace L. Brown, dated November 18,1925. The second is a general power of appointment reserved to the decedent under an inter vivos trust indenture dated August 9, 1927, made by the decedent as grantor.
On February 3, 1942 the decedent and his first wife, Muriel, entered into a separation agreement which provided that in consideration for Muriel relinquishing all of her marital rights and claims to the decedent’s property, the decedent would pay to Muriel the sum of $450, plus $100 per month to be used for the support of the objectant until he reached the age of 21 years. The decedent further agreed to maintain irrevocably certain policies of insurance on his life with the objectant as designated beneficiary. No evidence was offered at the hearing in respect to the existence of any such life insurance.
The only payment made by the decedent under the 1942 agreement was the sum of $250, paid to Muriel at the time of the execution of the agreement. None of the monthly payments was made.
The decedent and Muriel were divorced pursuant to a decree of the Circuit Court, Broward County, Florida, dated May 25, 1942. Both the decedent and Muriel remarried.
On November 9, 1943 a judgment was obtained against the decedent in the sum of $1,567.90 for unpaid monthly installments due under the 1942 agreement. Thereafter, on February 18, 1944, the decedent, Muriel, and their respective spouses *988 entered into an agreement in order to “ amicably settle and adjust” these differences. The 1944 agreement provided that Herman Maier, Muriel’s second husband, would adopt the objectant. The decedent consented to the adoption and agreed to lend all necessary assistance to effect same. Muriel agreed to promptly procure a satisfaction of the $1,567.90 judgment previously entered, and Muriel and Herman further agreed to hold the decedent safe and harmless from making any further payments of $100 per month as required by the 1942 agreement. Finally, the decedent agreed to exercise his testamentary powers of appointment irrevocably in such a manner which, in view of subsequent events, would result in the objectant receiving a one-third interest in the principal of the trusts. Simultaneously, with the execution of the 1944 agreement, decedent executed a will providing for the exercise of the power in objectant’s favor. On that very same day an order of adoption was made providing for the adoption of the objectant by Herman Maier.
On September 2,1964 decedent executed a new will, which was admitted to probate herein on October 2, 1968, revoking all prior wills. In the later will the decedent exercised the powers of appointment in favor of his estate. No provision of any kind was made for the objectant.
From the figures submitted by the executor in the accounting filed, it would appear that as a result of the exercise of the powers under the will dated September 2, 1964, decedent’s estate received principal in the sum of $148,011.76 and income on said principal in the amount of $16,891.13, making a total of $164,902.89. The objectant now clqims as a creditor of the estate one third of the total amount, or $54,967.63, free of the imposition of administration expenses. In the alternative, assuming the court finds that the agreement to exercise the powers of appointment in favor of the objectant is unenforceable, the objectant seeks to recover an amount equal to the unpaid monthly support payments due under the 1942 agreement from March 1, 1942 until January 29, 1955, with interest thereon from the respective due dates.
To the contrary, petitioner contends that the provision in the 1944 agreement purportedly binding decedent to exercise his testamentary powers of appointment in favor of the objectant is unenforceable, and, further, that the objectant has no standing to seek restitution for the invalid promise.
A donee of a power of appointment which is not presently exercisable, or of a postponed power which has not become exercisable, cannot contract to make an appointment. Such a con *989 tract is unenforceable and cannot be made the basis of an action for specific performance or damages. (EPTL 10-5.3; Farmers’ Loan & Trust Co. v. Mortimer, 219 N. Y. 290; Kent v. Thornton, 179 Misc. 593, affd. 265 App. Div. 904.)
It follows that since such a contract is unenforceable by the direct parties, it may not be enforced by one who claims the status of a third-party beneficiary, and the court so holds. The cases cited by the objectant, Forman v. Forman (17 N Y 2d 274); Matter of Granwell (20 N Y 2d 91); Matter of Salvage (N. Y. L. J., April 7, 1940, p. 17, col. 7), all basically stand for the same general principle that where there is an enforceable right under an agreement, a third-party beneficiary may have standing to sue. Here, however, we are faced with a provision in the 1944 agreement which is unenforceable and not subject to an action for specific performance or damages by anyone. (EPTL 10-5.3.)
The objectant cites the same three cases, supra, in support of the proposition that he is entitled to maintain an action for restitution of the consideration allegedly given for the decedent’s unenforceable promise to execute the testamentary powers of appointment in his favor. The court holds to the contrary. Hpon the evidence presented, the court cannot make a finding that the objectant would have standing to enforce any right to the support payments provided under the 1942 agreement, and, therefore, he cannot seek restitution of same as the alleged consideration for the above promise. As a general rule, children for whose support a provision is made in a separation agreement between their parents, payable directly to a parent, are not able to enforce that portion of the agreement directly in an action against the other parent. (Kendall v. Kendall, 200 App. Div. 702.) Unless there is a showing that one spouse is under a disability of one kind or another to enforce his or her own legal rights against the other, it is the one who is the direct party to the separation agreement, and to whom payments for the support of the child are to be made, who may enforce the agreement. (Forman v. Forman, supra, p. 280.)
Moreover an assumption that the sole consideration given by the decedent for the relinquishment of his support obligations was the unenforceable promise to execute the testamentary powers of appointment overlooks the fact that in the same agreement decedent consented to the adoption of his child by his former wife’s husband. It would be pure conjecture to say that this was not such consideration as was intended to support the relinquishment of his obligations under the 1942 agreement, par *990 ticularly since the order of adoption of the objectant was entered on the same day as the 1944 agreement was executed.
Accordingly, the objections filed to the account on behalf of James L. Brown are dismissed. Upon completion of the tax proceedings a decree may be entered settling the account as filed.